### ARMSTRONG et al. v. WALTERS.

#### (District Court, E. D. Pennsylvania. May 17, 1915.)

#### No. 2670.

1. SALES ☞418—BREACH BY SELLER—MEASURE OF DAMAGES.

Where a seller of brewers' grains to be delivered in installments notified the buyer that its plant had been destroyed by fire and that it would not be able to make the deliveries, the buyer could declare a breach as of that date and hold the seller liable for any difference between the then market price and the contract price, or it could declare successive breaches as the respective times of delivery arrived and in like manner recoup its loss; but it could not speculate upon the seller's misfortunes and measure the damage by the highest market price, whenever reached, unless the time of delivery was extended.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. ☞418.]

2. COURTS ☞328—UNITED STATES COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

Where the amount in controversy, as shown by the statement of claim and the attempted proof, exceeded the jurisdictional amount, and there was no colorable expansion of the claim, a federal court had jurisdiction, though the verdict was for an amount below its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. ☞328.]

At Law. Action by Obadiah E. Armstrong and another, copartners trading as Armstrong & Demarest, against James M. H. Walters, trading as J. M. H. Walters. On motion and reasons for a new trial and motion in arrest of judgment. Motions discharged.

For opinion on motion to dismiss for want of jurisdiction, see 219 Fed. 320.

Ward W. Pierson, of Philadelphia, Pa., for plaintiffs.
Johnson & Gilkyson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The verdict in this case was for the plaintiffs, but for a sum which did not answer to their expectations. They have in consequence moved for a new trial. The defendant had originally moved to dismiss the action for want of jurisdiction. The jurisdictional fact is the amount in controversy between the parties. The verdict was for $480.15. The sum in which the jury found for the plaintiffs, without interest, in all probability does not exceed $325. The defendant now renews his demand to have the case dismissed in the form of a motion in arrest of judgment. We will dispose of the two motions in their order.

The reasons accompanying the motion for a new trial are eight in number. They involve, however, but one question. What that question is, how it arose in the course of the trial, and the disposition which was made of it by the trial judge, are best shown by a short outline statement of the facts.

In June, 1907, the plaintiffs were dealers in brewers' grains, having a place of business in Lafayette, N. J. The defendant was also a dealer in grains, and, in addition, had a plant within this district for the

drying of grains. He dealt in both wet and dry grains. In June, 1907, the parties entered into a contract, a summary of which is that the plaintiffs bought and the defendant agreed to deliver certain quantities of dried brewers' grains at certain times at stipulated prices. Deliveries were to be made during the months of July, August, and September following—five car loads each month. The contract, which had been made orally between the parties, was confirmed by a letter from the defendant to the plaintiffs under date of June 20, 1907. The defendant entered upon the performance of his contract, when unfortunately, early in August following, his plant was destroyed by fire, or at least damaged to such an extent as to put his drier out of business. He began at once to rebuild his plant, with the evident expectation originally that it would be completed in the fall. In point of fact it was not restored into working order until the following February. The plaintiffs were promptly notified on August 9, 1907, of the fire, and that as a consequence the defendant would not be able to make delivery of grains in compliance with his contract.

The parties also had dealings in wet grains. The defendant was again the seller, and the plaintiffs the buyers. These dealings were not interrupted or interfered with by the fire, which only affected the defendant's drying plant. In the course of these dealings in wet grains the plaintiffs became indebted to the defendant. Being in need of money to rebuild his plant, he was somewhat urgent in his demands for payment. The parties with respect to their contract, after June, 1907, had communication with each other only by letter. They never personally met, or at least never spoke to each other on the subject of the contract in suit. This is mentioned as part of the history of the transactions up to the suit, to emphasize the fact, which is a conceded fact in the case, that the evidence hereinafter referred to consists wholly of writings, and there is an entire and absolute absence of any oral testimony relating thereto.

The market for dried grains, according to the plaintiffs' claim, supported by evidence and testimony submitted at the trial, was steadily upward in price, at least to a time late in December or early in January, 1908. The question of market prices was one of the questions in controversy before the jury. With this feature, however, we are not now concerned.

The times of delivery called for by the contract, it will be remembered, were the months of July, August, and September. The plaintiffs did not supply themselves with grains until some time in the latter part of December, 1907, or the early part of January, 1908. The situation is therefore this: If the plaintiffs' damages are to be assessed as of the dates of delivery called for by the contract, the verdict of the jury is not complained of in the motion under discussion. If, however, the damages are to be assessed as of the dates when the plaintiffs supplied themselves with grains by purchases in the open market during the latter part of 1907 or the earlier part of 1908, then the plaintiffs have a well-grounded complaint. This is because the trial judge instructed the jury that the measure of damage was the difference between the market price of grains of a like kind and quality at the time

and place of delivery called for by the contract and the contract price of the grains. This called for the further instruction that the plaintiffs could not recover for damages measured by the high-water mark, which prices may have reached subsequently to the time of delivery. The plaintiffs complain of this feature of the charge as error, and its correctness is the question referred to as the one question now remaining in the cause.

The theory upon which the plaintiffs tried their case was that after the fire, but before the time of delivery of the last grains under the contract, the parties had conducted negotiations and had reached an agreement for the extension of the time of delivery until the defendant had reconstructed his drier, when he was to fulfill his contract by making deliveries in accordance therewith. These negotiations and this agreement, according to the plaintiffs' claim, were evidenced by a series of letters.

The plaintiffs asked the court to submit to the jury as a question of fact whether there had been such an extension, and to instruct the jury that, if the time of delivery had been extended, then the measure of damage should be determined in accordance with the prices prevailing at the time the defendant fell down upon this second or extended contract. Before the charge was delivered the trial judge made the inquiry of counsel whether all the evidence on that subject was in writing and consisted of the letters. The answer was in the affirmative. The court thereupon, in the absence of any testimony or evidence other than the writings, charged the jury that the letters did not evidence any such agreement of extension. The consequence is accepted that the jury were then relegated to the market price at the time of delivery called for by the contract, together with the contract price, as affording the proper measure of damages.

These letters began with a notification of the plaintiffs by the defendant on August 9th of the fact of the fire and his consequent inability to fulfill his contract, and because of this his refusal to do so. This letter does not appear in the stenographer's notes. The next letter was from the plaintiffs to the defendant, under date of August 21st. There is no copy of this letter of record, and it does not appear to have been offered in evidence. The next letter was from the defendant to plaintiffs, under date of August 22, 1907. This was followed by a letter to plaintiffs under date of November 2d. Following this was a letter from plaintiffs to defendant, dated December 12th, and this by letters from the defendant to the plaintiffs, dated December 14 and December 26, 1907.

[1] It is well, perhaps, to premise the consideration of these letters after that of August 9th with the observation that the plaintiffs, having been notified on that date that the defendant had fallen down on his contract, had the right to have declared a breach as of that date, to have supplied themselves elsewhere within a reasonable time thereafter, holding the defendant responsible for any difference between the then market price and the contract price. It was also within their rights to have declared successive breaches of the contract as the respective times of delivery arrived and in like manner have recouped their loss.

It was clearly not their right to speculate upon the misfortunes of the defendant and measure their damage by the top of the market whenever it was reached, unless the time of delivery had been extended by the parties.

This brings us to a consideration of the letters. Without taking the space to analyze this correspondence and to summarize the results, it is sufficient to observe that it is clear that up to December 12th there was no thought in the minds of the plaintiffs that there had been any agreement to extend the time of delivery. It is to be further observed that the market price had then reached nearly, if not quite, its highest point. The plaintiffs clearly had the right to insist, as they were then doing, upon the fulfillment of the contract and to hold the defendant to responsibility for its breach. Just as clearly, however, the money responsibility was to be determined by the market price at the times of delivery, and the plaintiffs could not have increased this measure otherwise than by an agreement to which the defendant was a party.

The defendant was likewise in the exercise of his rights in seeking to minimize the damage by offering to deliver as soon as his drier was in operation. The attitude of neither party affected their legal rights, further than to put each of them in a position to assert them. The measure of damages was one of their rights which could not be changed, except by agreement. There is nothing in the letters out of which such an agreement springs. There was evidently no thought in the mind of plaintiffs on December 12, 1907, of such an agreement having at that time been made. The subsequent letters made none. As the evidence would not have supported the finding of an agreement, it is of no moment now to inquire whether the question should have been submitted to the jury.

[2] The motion in arrest of judgment is disposed of by what was said on the motion to dismiss for want of jurisdiction. The amount of the verdict does not affect the question. It is determined by the amount in dispute—the sum in controversy. This exceeded $2,000, the then jurisdictional minimum, by the statement of claim and the proofs attempted at the trial. There was no colorable expansion of the claim. Had the statement set forth no more than was required to be set forth, jurisdiction would be conceded by the defendant. The position taken, however, is that the claim as set forth on its face shows to a legal certainty the damages recoverable to be less than the jurisdictional sum. There is that in the statement of claim which gives more than the strength of mere plausibility to defendant's argument, but the argument none the less falls short of possessing convincing power. The statement of claim sets forth a contract, its breach, and a claim of damages sufficient in amount to confer jurisdiction. The fact that the plaintiffs fell short in their proofs, or were overborne by the strength of the defense, still leaves the jurisdictional fact of "dispute" having been in the case. Indeed, it is still present. This suggests, as possibly intended to be included in the reasons for a new trial, the complaint that under the evidence the verdict inadequately measured the damages. In one sense the weight of the evidence might fairly be said to have called for a larger verdict. There was evidence,

however, in support of a less. The plaintiffs were presenting a stale claim. The action was saved from the grasp of the statute by a few days' margin. The testimony in support of plaintiffs' prices bore upon a time nearly eight years ago.

There was no reason the plaintiffs should be relieved from the burden of proving their case, including the damages sustained. The case was earnestly and well tried, and the verdict expressed the judgment of a jury who heard the cause with patience and intelligence.

The motion for a new trial, and that in arrest of judgment, are each discharged, and plaintiffs have leave to enter judgment on the verdict, with costs.